IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

```
_____
                              )
INTRACOMM, INCORPORATED,      )
et al.,                       )
                              )
          Plaintiffs,         )
                              )
v.                            )    Civil Action No. 05-0955
                              )
KEN S. BAJAJ, et al.,         )
                              )
          Defendants.         )
_____)
```

### MEMORANDUM OPINION

This matter comes before the Court on cross motions for summary judgment by Plaintiffs and Defendants. Plaintiffs filed suit against Defendants alleging failure to pay minimum wage in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (2000) (Count 2), breach of contract (Count 3), actual fraud (Count 4), constructive fraud (Count 5), conspiracy in violation of Va. Code Ann. §§ 18.2-499 to -500 (2004) (Count 6), and false advertising in violation of Va. Code Ann. §§ 18.2-216, 59.1-68.3 (Count 8). Plaintiffs' Amended Complaint also requests declaratory judgment (Count 1) and equitable accounting (Count 7). The Court has jurisdiction over Plaintiffs' Amended Complaint pursuant to 28 U.S.C. §§ 1131, 1367.

Plaintiff IntraComm, Inc. (IntraComm) is a corporation whose principal place of business is in the Commonwealth of Virginia.

IntraComm is a software developer and information technology service provider. Plaintiff Babak Habibi (Habibi) is one of the founders of IntraComm and the creator of a software integration system known as IC-WEL.

Defendant BAE Systems Information Technology, LLC (BAE IT LLC), formerly known as DigitalNet Government Solutions, LLC (DigitalNet LLC), is a limited liability corporation whose principal place of business is in the Commonwealth of Virginia. BAE IT LLC is an information technology service provider and is a wholly owned subsidiary of BAE Systems IT, Inc. (BAE IT Inc.), formerly known as DigitalNet, Inc. (DigitalNet Inc.). BAE IT Inc. is a wholly owned subsidiary of Defendant BAE Systems IT Holdings, Inc. (BAE IT Holdings), formerly known as DigitalNet Holdings, Inc. (DigitalNet Holdings). BAE IT Holdings is a corporation whose corporate offices are in the Commonwealth of Virginia. BAE IT Holdings is a wholly owned subsidiary of Defendant BAE Systems, Inc. (BAE). BAE is a subsidiary of BAE Systems, PLC, a British corporation.

At all relevant times to this matter, Defendant Ken Bajaj (Bajaj) and Defendant Jack Pearlstein (Pearlstein) held positions of importance within DigitalNet LLC and DigitalNet Holdings. Bajaj served as chairman and CEO of both DigitalNet LLC and DigitalNet Holdings. Pearlstein served as Senior Vice President and Assistant Secretary of DigitalNet LLC and CFO of DigitalNet

Holdings. At all relevant times to this matter, Defendant Steven Hanau (Hanau) served as President of DigitalNet LLC.

DigitalNet Holdings was formed in September 2001 by Bajaj, Pearlstein, and others. In November 2002, through its wholly owned subsidiary DigitalNet Inc., DigitalNet Holdings acquired Getronics Government Solutions, LLC, which was subsequently renamed DigitalNet LLC. Hanau joined DigitalNet LLC in January 2002. At all relevant times to this matter, DigitalNet LLC was a wholly owned subsidiary of DigitalNet Inc., which was a wholly owned subsidiary of DigitalNet Holdings.

In Spring 2004 Habibi proposed to Bajaj and Pearlstein that he be allowed to use the DigitalNet LLC name to market IC-WEL. Pursuant to Habibi's proposal, DigitalNet LLC and IntraComm entered into an agreement on August 16, 2004, entitled "Agreement for Assignment of Contracts and Grant of Rights in Data" (Assignment Agreement). The Assignment Agreement provided for the transfer of certain IntraComm contracts to DigitalNet LLC, the transfer of certain rights in IC-WEL to DigitalNet LLC, and the employment of certain IntraComm employees by DigitalNet LLC. In conjunction with the Assignment Agreement, DigitalNet LLC and Habibi entered into an agreement on August 16, 2004, entitled "General Employment Agreement" (Employment Agreement). The Employment Agreement provided the terms and conditions of Habibi's employment with DigitalNet LLC. Both the Assignment

Agreement and the Employment Agreement contain entire agreement clauses which provide that the respective agreements supersede all previous agreements and representations and contain the entire understanding between the parties.

In Summer 2004 BAE began negotiating a purchase of DigitalNet Holdings' outstanding shares. As DigitalNet Holdings was a publicly traded company, information regarding the potential BAE acquisition was kept confidential and was only disclosed to DigitalNet Holdings' most senior executives. As a result, neither IntraComm nor Habibi were advised of the potential BAE acquisition before August 16, 2004. On September 11, 2004, BAE and DigitalNet Holdings entered into an agreement whereby BAE purchased DigitalNet Holdings outstanding shares. The BAE acquisition was completed on October 25, 2004, at which time DigitalNet Holdings changed its name to BAE IT Holdings, DigitalNet Inc. changed its name to BAE IT Inc., and DigitalNet LLC changed its name to BAE IT LLC.

Upon completion of the BAE acquisition, Bajaj and Pearlstein left the newly named BAE IT LLC. Hanau, who had been running the day-to-day operations of DigitalNet LLC since 2002, remained with the company after its change to BAE IT LLC. Hanau continues to run the day-to-day operations of BAE IT LLC as its General Manager.

Courts must grant summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, courts view the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party then has the burden of showing that a genuine dispute as to any material fact does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 248. "Rule 56(e) requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Count 1 of Plaintiffs' Amended Complaint requests declaratory judgment against BAE IT LLC, BAE IT Holdings, and BAE (Count 1 defendants) on four different issues: (1) whether Habibi was a non-exempt employee entitled to wages under the FLSA, (2)

whether the non-compete clause in the Employment Agreement is enforceable, (3) whether Habibi is entitled to compensation as a Vice President of BAE IT LLC, and (4) whether the Count 1 defendants exercised BAE IT LLC's option to purchase IC-WEL. Each of these issues will be discussed in turn.

First, as stated below in the Court's discussion of Count 2 of Plaintiffs' Amended Complaint, Habibi is a non-exempt employee under the FLSA, therefore Plaintiffs are entitled to summary judgment on issue one. Second, BAE IT LLC has expressly waived its right to enforce the non-compete clause of the Employment Agreement, therefore, issue two is moot. Third, both the Assignment Agreement and the Employment Agreement contain entire agreement clauses, and neither provides Habibi Vice President compensation, therefore, the Count 1 defendants are entitled to summary judgment on issue three. Fourth, as stated below in the Court's discussion of Count 3 of Plaintiffs' Amended Complaint, the Count 1 defendants did not exercise BAE IT LLC's option to purchase IC-WEL, therefore, the Count 1 defendants are entitled to summary judgment on issue four.

Count 2 of Plaintiffs' Amended Complaint alleges that BAE IT LLC willfully violated the FLSA by failing to pay Habibi at least minimum wage for hours he worked while employed by BAE IT LLC. The parties have stipulated that Habibi was not paid for 220 hours that he worked in excess of forty hours per week, totaling

$1133.00 (220 hours at $5.15 per hour). The parties have also stipulated that Habibi was not paid for eighty hours that he worked from May 7, 2004, to May 20, 2004, totaling $560.00 (eighty hours at $7.00 per hour). The only issues before the Court regarding Count 2 of Plaintiffs' Amended Complaint are whether Habibi was a non-exempt employee under the FLSA and whether any failure by BAE IT LLC to pay wages to Habibi was willful.

The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is ... employed in an enterprise engaged in commerce ..., wages at the following rate[]: ... $5.15 an hour." 29 U.S.C. § 206(a). While the FLSA is wide reaching in its scope, specific exemptions are provided. Specifically, the provisions of § 206 do not apply to "any employee employed in a bona fide ... administrative ... or outside salesman" capacity. 29 U.S.C. § 213(a). Despite BAE IT LLC's argument to the contrary, neither of these exemptions applies to Habibi.

The outside salesman exemption requires that an employee's primary duty be "making sales," and that an employee be "customarily and regularly engaged away from the employer's place or places of business in performing such duty." 29 C.F.R. § 541.500 (2005). While Habibi's employment with BAE IT LLC clearly meets the primary duty prong of the outside salesman exemption,

Habibi did not customarily and regularly work outside of BAE IT LLC's offices. During Habibi's employment with BAE IT LLC, approximately ten months, he only went on four sales calls outside BAE IT LLC's offices. Habibi primarily worked at BAE IT LLC's Headquarters where he used its Enterprise Management Center (EMC) to market IC-WEL. Therefore, the outside salesman exemption does not apply to Habibi.

The Administrative employee exemption contains a minimum salary requirement of $455.00 per week. 29 C.F.R. § 541.200(a)(1). Habibi was never paid more than $280.00 per week, therefore, the administrative employee exemption does not apply to Habibi. Nevertheless, BAE IT LLC argues that Habibi is exempt under the FLSA combination exemption. 29 C.F.R. § 541.708. The combination exemption provides that "[e]mployees who perform a combination of exempt duties ... may qualify for exemption." Id. However, the combination exemption does not apply to Habibi because he does not qualify for either the outside salesman or administrative employee exemption.

Finally, there is no evidence that BAE IT LLC's failure to pay Habibi wages under the FLSA was willful. The undisputed evidence is BAE IT LLC's classification of Habibi as an exempt employee under the combination exemption was done in good faith. See Id. While such a classification was incorrect, as stated above, there is no evidence that the BAE IT LLC's incorrect

classification of Habibi was intentional or willful. Therefore, Plaintiffs are entitled to summary judgment on Count 2 of Plaintiffs' Amended Complaint, and judgment should be entered for Habibi in the amount of $1693.00.

Count 3 of Plaintiffs' Amended Complaint alleges breach of contract by BAE IT LLC and BAE. Specifically, Plaintiffs claim that BAE IT LLC and BAE violated the terms of the Assignment Agreement and the Employment Agreement by (1) failing to pay Habibi a portion of the revenues earned on certain contracts, (2) failing to provide Habibi the financial backing and support necessary to successfully market IC-WEL, (3) refusing to allow Habibi to manage BAE IT LLC's EMC, and (4) exercising BAE IT LLC's option to purchase IC-WEL without paying the $1.5 million purchase price.

The Assignment Agreement provides for the transfer of certain IntraComm contracts to DigitalNet LLC. Pursuant to the Assignment Agreement, a portion of the revenue generated by those contracts was to be divided on a quarterly basis between Habibi and his staff when the earliest of one of the following four conditions were satisfied: (1) two years passed from the date the Assignment Agreement was entered into; (2) the cumulative profits generated by those contracts exceeded $750,000.00; (3) the top three members of Habibi's staff converted to standard DigitalNet LLC compensation; or (4) by mutual agreement of the parties. The

undisputed evidence is that none of these conditions were satisfied. Habibi's employment was terminated within a year of the Assignment Agreement, cumulative profits generated by the transferred IntraComm contracts never exceeded $750,000.00, no members of Habibi's staff converted to standard DigitalNet LLC compensation, and the parties never agreed to pay Habibi revenue sharing. Likewise, Habibi is not entitled to commissions under the Assignment Agreement because zero IC-WEL licenses were sold while Habibi was employed by BAE IT LLC.

Any alleged refusal by BAE IT LLC or BAE to allow Habibi to manage the EMC is irrelevant to Count 3 of Plaintiffs' Amended Complaint. The Assignment Agreement and the Employment Agreement both contain entire agreement clauses that provide that the respective agreements supersede all previous agreements and representations and contain the entire understanding between the parties. Therefore, BAE IT LLC was not contractually obligated to name Habibi manager of the EMC because neither the Assignment Agreement nor the Employment Agreement provide that Habibi will manage the EMC.

The Assignment Agreement gives DigitalNet LLC the exclusive right to market, sell, use, and license IC-WEL for a period of fifteen months, starting August 16, 2004. In addition, the Assignment Agreement gives DigitalNet LLC, during the fifteen month time period specified above, the unrestricted option to buy

all rights in IC-WEL for $1.5 million. Plaintiffs argue that BAE IT LLC and BAE exercised BAE IT LLC's option to buy IC-WEL by filing a provisional patent for IC-WEL, and placing the BAE logo on IC-WEL advertisements.

While BAE IT LLC did file a provisional patent for IC-WEL which named itself as the assignee, this does not constitute an exercise of BAE IT LLC's option to buy IC-WEL. The provisional patent merely protected BAE IT LLC's possible ownership rights in IC-WEL from elimination by a public disclosure of IC-WEL by Habibi. BAE IT LLC never expressed to Habibi that it desired to exercise its option to buy IC-WEL or pay Habibi the $1.5 million required by the Assignment Agreement. Also, BAE IT LLC did not exercise its option to buy IC-WEL by placing the BAE logo on IC-WEL advertisements. Not only did the Assignment Agreement give BAE IT LLC the express right to market, sell, use, and license IC-WEL, but BAE IT LLC's IC-WEL advertisements did not claim ownership of IC-WEL and directed all potential licensees to Habibi. Therefore, Defendants are entitled to summary judgment on Count 3 of Plaintiffs' Amended Complaint.

Count 4 of Plaintiffs' Amended Complaint alleges that Bajaj, Pearlstein, Hanau, DigitalNet LLC, and DigitalNet Holdings (Count 4 defendants) committed actual fraud by failing to notify Plaintiffs of the potential BAE acquisition before August 16, 2004. Under Virginia law, the elements of actual fraud are "(1) a

false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Evaluation Research Corp. v. Alequin, 247 Va. 143, 148 (1994). Plaintiffs have failed to establish these elements.

Plaintiffs have failed to show that the Count 4 defendants made any false representations regarding the Assignment Agreement or the Employment Agreement. Under Virginia law, "silence cannot give rise to liability for fraud in the absence of a duty of disclosure." Sabet v. E. Va. Med. Auth., 775 F.2d 1266, 1270 (4th Cir. 1984) (citing Ware v. Scott, 220 Va. 317, 320-21 (1979)). The Count 4 defendants had no duty to disclose the potential BAE acquisition to Plaintiffs because it was completely immaterial to DigitalNet LLC's respective agreements with Plaintiffs.

Plaintiffs have failed to show that the potential BAE acquisition was material to either of their respective agreements with DigitalNet LLC. BAE was seeking to acquire DigitalNet Holdings, not DigitalNet LLC, with whom Plaintiffs had contracted. While Plaintiffs contend that they would not have entered into their respective agreements with DigitalNet LLC if they had known about the potential BAE acquisition, such a position is not supported by the evidence. The undisputed evidence is that (1) prior to August 16, 2004, neither Plaintiffs nor the Count 4 defendants had reason to believe that any

12

acquisition of DigitalNet Holdings would effect Plaintiffs' or DigitalNet LLC's performance of their respective contractual obligations to each other; (2) Plaintiffs were given the same opportunity to market IC-WEL before and after the BAE acquisition; and (3) when Habibi was notified of the BAE acquisition he said that it was a positive development.

Plaintiffs have failed to show that the Count 4 defendants intended to mislead Plaintiffs by not disclosing the potential BAE acquisition. The undisputed evidence is that the Count 4 Defendants did not disclose the potential BAE acquisition to Plaintiffs before August 16, 2004, because of two good-faith business decisions. First, as discussed above, Defendants believed that the potential BAE acquisition was immaterial to contract negotiations between Plaintiffs and DigitalNet LLC. Second, Defendants believed that federal securities law prohibited them from disclosing the potential BAE merger. Counsel for DigitalNet Holdings advised that disclosure of BAE's potential acquisition of DigitalNet Holdings was prohibited because DigitalNet Holdings was a publicly traded company.

Plaintiffs have failed to show that they relied on the fact that DigitalNet LLC would not be acquired by BAE, or any other entity, when they entered into their respective agreements with DigitalNet LLC. The undisputed evidence is that prior to August 16, 2004, Plaintiffs never inquired about or expressed concerns

regarding the possibility of another company acquiring DigitalNet Holdings. Plaintiffs have also failed to show that they have been harmed by not being notified of the potential BAE acquisition prior to August 16, 2004. While Plaintiffs allege that the BAE acquisition limited or eliminated their ability to market IC-WEL to commercial entities, such a contention is not supported by the evidence. The undisputed evidence is that both before and after the BAE acquisition Habibi was supervised by Hanau and that Habibi was encouraged and allowed to market IC-WEL to government and commercial entities. Therefore, Defendants are entitled to summary judgment on Count 4 of Plaintiffs' Amended Complaint.

Count 5 of Plaintiffs' Amended Complaint alleges that Bajaj, Pearlstein, Hanau, DigitalNet LLC, and DigitalNet Holdings (Count 5 defendants) committed constructive fraud by failing to notify Plaintiffs of the potential BAE acquisition before August 16, 2004. Under Virginia law, the elements of constructive fraud are (1) a false representation, (2) of a material fact, (3) made innocently or negligently, (4) reliance by the party misled, and (5) resulting damage to the party misled. Blair Constr., Inc. v. Weatherford, 253 Va. 343, 346 (1997). As stated below in the Court's discussion of Count 4 of Plaintiffs' Amended Complaint, the undisputed evidence shows that the Count 5 defendants did not make any false representations of material facts to Plaintiffs, and Plaintiffs did not rely on, nor were they damaged by, any

such representations. Therefore, Defendants are entitled to summary judgment on Count 5 of Plaintiffs' Amended Complaint.

Count 6 of Plaintiffs' Amended Complaint alleges that Defendants committed conspiracy in violation of Va. Code Ann. §§ 18.2-499 to -500, by failing to notify Plaintiffs of the potential BAE acquisition before August 16, 2004. The Virginia conspiracy statute is violated when two or more persons conspire to willfully and maliciously injure another in his "reputation, trade, business or profession." Va. Code Ann. § 18.2-499. The malice required under the Virginia conspiracy statute is "legal malice, i.e., that [Defendants] acted intentionally, purposely, and without lawful justification." Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc., 249 Va. 39, 47 (1995). Plaintiffs have failed to show that Defendants committed conspiracy.

As the Court stated above in its discussion of Count 4 of Plaintiffs' Amended Complaint, Defendants did not disclose the potential BAE acquisition to Plaintiffs before August 16, 2004, because of two good-faith business decisions. The undisputed evidence is that Defendants believed that the potential BAE acquisition was immaterial and non-disclosable. There is no evidence that Defendants intentionally and purposely decided not to notify Plaintiffs of the potential BAE acquisition so that Plaintiffs' "reputation, trade, business or profession" would be injured. Va. Code Ann. § 18.2-499. Therefore, Defendants are

entitled to summary judgment on Count 6 of Plaintiffs' Amended Complaint.

Count 7 of Plaintiffs' Amended Complaint requests an equitable accounting to determine the amount, if any, of IC-WEL sales and license fees owed to Plaintiffs. However, as the Court stated above in its discussion of Count 3 of Plaintiffs' Amended Complaint, Plaintiffs are not entitled to compensation under the Assignment Agreement because (1) none of the profit sharing preconditions were met, and (2) Habibi sold zero IC-WEL licenses while employed by BAE IT LLC. Therefore, Defendants are entitled to summary judgment on Count 7 of Plaintiffs' Amended Complaint.

Count 8 of Plaintiffs' Amended Complaint alleges that BAE IT LLC and BAE engaged in false advertising in violation of Va. Code Ann. §§ 18.2-216, 59.1-68.3, by placing the BAE logo on IC-WEL advertisements. The Virginia false advertising statute is violated when an advertisement contains a false representation that induces the public to enter into an obligation. Va. Code Ann. § 18.2-216. The placement of a BAE logo on an IC-WEL advertisement was not a false representation as BAE IT LLC did in fact have the right to market, sell, use, and license IC-WEL under the Assignment Agreement. The IC-WEL advertisement did not state or represent that BAE IT LLC was the owner of IC-WEL, rather it referred all potential IC-WEL licensees to Habibi. Therefore, Defendants are entitled to summary judgment on Count 8

16

of Plaintiffs' Amended Complaint.

An appropriate Order shall issue.

/s/
_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 19, 2006